```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ESTATE OF COURTNEY L. RATCLIFFE,    :
NANCY RATCLIFFE, and ALFRED         :
RATCLIFFE,                          :
                  Plaintiff,        :      05 Civ. 10272 (JFK)
                                    :      OPINION & ORDER
        - against -                 :
                                    :
PRADERA REALTY COMPANY,             :
ANASTASIOS TZEZAILIDIS,             :
287 10TH GLASS RESTAURANT, INC.,    :
TIMOTHY SHERRY, FERNANDO HENAO and  :
JOHN DOES I-V and ABC COMPANIES     :
VI-X, being fictitious entities     :
and/or persons, t/a or d/b/a        :
PRADERA REALTY COMPANY and/or 287   :
10TH GLASS RESTAURANT, INC.         :
jointly, severally and in the       :
alternative,                        :
                  Defendants.       :
-----------------------------------X
```

**APPEARANCES**

   For Plaintiffs the Estate of Courtney Ratcliffe, Nancy Ratcliffe, and Alfred Ratcliffe:

          DAVID J. DETOFFOL, ESQ.
          305 Broadway, Suite 1101
          New York, New York 10007


   For Defendants 287 10th Glass Restaurant, Inc., Timothy Sherry, and Fernando Henao:

          ABRAMS, GORELICK, FRIEDMAN & JACOBSON, P.C.
          One Battery Park Plaza, 4th Floor
          New York, New York 10004
               Of Counsel:   Glenn A. Jacobson, Esq.


**JOHN F. KEENAN, United States District Judge.**

JOHN F. KEENAN, United States District Judge:

## BACKGROUND

Before the Court is the motion of Plaintiffs Alfred Ratcliffe, Nancy Ratcliffe, and the Estate of Courtney Ratcliffe (collectively, "Plaintiffs") to amend their complaint, pursuant to Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure, to include a claim for exemplary damages based on evidence newly obtained during the course of discovery. For the following reasons, Plaintiffs' motion to amend their complaint is granted.

Plaintiffs' claims arise from the tragic accidental death of Courtney Ratcliffe ("Ms. Ratcliffe"), a 23-year old college student, who in the early morning of November 1, 2003, sustained fatal head injuries after falling in the common stairway of the Manhattan apartment building in which she lived. Plaintiffs brought suit against the owners of Ms. Ratcliffe's apartment building (collectively, the "Pradera Defendants") and against 287 10th Glass Restaurant, Inc., Timothy Sherry, and Fernando Henao,(collectively, the "Glass Defendants"), the owners and operators of the Glass restaurant and lounge ("Glass"), an establishment located approximately two blocks from Ms. Ratcliffe's residence, where the decedent allegedly consumed alcohol in the hours prior to her death. In their Second Amended Complaint ("SAC"), Plaintiffs asserted causes of action, on behalf of Ms. Ratcliffe's estate, against the Pradera Defendants

for negligence, on the ground that the handrail of the common stairway down which Ms. Ratcliffe fell was defective; and against the Glass Defendants, for negligently serving alcohol to Ms. Ratcliffe while she was visibly intoxicated in the hours prior to her death.  The SAC also included a claim of negligence against both the Pradera and Glass Defendants on behalf of Alfred and Nancy Ratcliffe, Ms. Ratcliffe's parents.  Plaintiffs now seek to file a Proposed Third Amended Complaint (the "TAC") that includes new allegations of conduct and a claim for exemplary damages that relate solely to the Glass Defendants.[1]

### DISCUSSION

Plaintiffs originally moved to amend their complaint on May 12, 2007.  In that motion, Plaintiffs argued that leave to amend should be granted because Plaintiffs satisfied the requirements of Rule 15(a).  Defendants opposed the motion on Rule 15(a) grounds.  By Order dated July 16, 2007, the Court dismissed Plaintiffs' Rule 15(a) motion without prejudice to allow Plaintiffs to re-file a motion, and the defendants to re-file an opposition brief, that addressed the standard for amendment set forth in Rule 16(b), which governs the amendment of pleadings in cases where a scheduling order has been entered and

---

[1] The TAC does not contain any new allegations or claims against the Pradera Defendants.  The Pradera Defendants' motion for summary judgment seeking dismissal of Plaintiffs' claims and the Glass Defendants' cross-claims is fully briefed and will be decided by a future Order of the Court.

3

the motion for amendment occurs after the expiration of the
deadline for amendment to pleadings. See Estate of Ratcliffe v.
Pradera Realty Co., No. 05 Civ. 10272 (JFK), 2007 U.S. Dist.
LEXIS 51800 (S.D.N.Y. July 16, 2007).  As the Court observed in
its Order of July 16, 2007, a scheduling order was entered in
this case which set January 11, 2007 as the deadline for
amendments to pleadings.  See First Amended Discovery Plan, Nov.
13, 2006 (Doc # 28.)  Here, therefore, "the lenient standard [for
amendment of pleadings] under Rule 15(a), which provides leave to
amend 'shall be freely given,' must be balanced against the
requirement under Rule 16(b) that the Court's scheduling order
'shall not be modified except upon a showing of good cause.'"
Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003)
(quoting Fed. R. Civ. P 15(a) and 16(b)).  Whether good cause
exists within the meaning of Rule 16(b) turns upon the diligence
of the party seeking to amend. Id.  In addition, "while the
absence of prejudice to a nonmoving party may be relevant to
leave to amend under Rule 15(a), it does not fulfill the good
cause requirement of Rule 16(b)."  Nairobi Holdings Ltd. v. Brown
Bros. Harriman & Co., No. 02 Civ. 1230 (LMM) (THK), 2006 U.S.
Dist. LEXIS 9931, at *20 (S.D.N.Y. Mar. 10, 2006).  Where the
moving party demonstrates that it could not have met the deadline
of a scheduling order despite the exercise of diligence, the
court may extend the deadline and thus grant the movant leave to
amend the complaint. See Parker v. Columbia Pictures Indus., 204

4

F.3d 326, 340 (2d Cir. 2000).

In the TAC, Plaintiffs seek to add a claim for exemplary damages.  The TAC contains the allegation that the Glass Defendants' negligent conduct included their "fail[ure] to monitor the TIPS training certification of its bartenders," (Pl. Mem., Ex. A ¶ 33), and states that the Glass Defendants' conduct, in serving Ms. Ratcliffe while she was visibly intoxicated, was "wanton, willful  and reckless" and constituted "gross negligence." (Id.)  The TAC also expressly cites to New York's Dram Shop Act, N.Y. G.O.L. § 11-101, as authority for the relief sought.

Plaintiffs contend that good cause for the proposed amendment exists because Plaintiffs only recently obtained, and could not have obtained earlier with due diligence, the evidence upon which their claim for exemplary damages is based.  The evidence at issue consists, first, of the deposition testimony of Vanessa Vega ("Vega") and, second, of records that Plaintiffs subsequently obtained as a result of facts revealed in Vega's deposition.

Vega, the general manager of Glass who worked at Glass on the night of October 31, 2003 and the early morning hours of November 1, 2003, was deposed on May 2, 2007, while fact discovery was ongoing.[2]  Vega testified that she was certified as

_____

[2]Pursuant to the Second Amended Discovery Plan (Doc. # 35), entered on April 30, 2007, all discovery, apart from expert

a trainer in Training in Intervention Procedures ("TIPS"), a program which provides training related to the responsible sale and service of alcohol.  Although TIPS instruction for employees of bars and restaurants is not mandatory under New York law, Glass required all of its employees to participate in the TIPS training.  Vega testified that she administered the TIPS training course to the entire Glass staff on a Sunday afternoon in late October, 2003.  After the training, Vega distributed a 40-question multiple choice test to the employees.  The test forms were later mailed to Health Communications, Inc., the company that owns TIPS.  Among the employees who attended the TIPS training and who took the test was Homberto Guzman ("Guzman"), a cocktail server and bartender at Glass, who worked as a bartender at Glass on the night of October 31, 2003.  Vega testified that Guzman failed the TIPS test that was administered to Glass's employees in October, 2003.

As a result of the information gleaned from Vega's deposition testimony, Plaintiffs subpoenaed from Health Communications, Inc. records of the Glass employees' TIPS test results as well as email correspondence between Vega and Health Communications, Inc.  Those records were received by Plaintiffs on June 7, 2007.  The record of the results of the TIPS test that Vega administered to the Glass employees indicated that the test

_____

depositions, was to be completed by July 2, 2007.

was administered on October 26, 2003, and that "Homberto Gozman" failed the test.  (See Pl. Mem., Ex. D.)  The subpoenaed documents also included an email, dated October 30, 2003, that Vega sent to a Health Communications' processing manager, in which Vega stated that she was aware that Guzman had failed the test and expressed an interest in having Guzman re-take the test.

Plaintiffs contend that the above-mentioned evidence establishes that Vega permitted Guzman to work as a bartender on the night of Ms. Ratcliffe's death, despite her prior knowledge that Guzman had failed the TIPS test, and that this conduct constitutes "an element of fault and/or intent on the part of the bar that supports a claim of wanton and reckless misconduct and blatant disregard for a known hazard, and thus supports a claim for punitive damages." (Pl. Mem. at 7.)

The Glass Defendants argue that no good cause exists for Plaintiffs' amendment, because Plaintiffs could have amended their complaint at an earlier date to include the allegation of gross negligence and a claim for exemplary damages.  While they do not concede Plaintiffs' entitlement to pursue exemplary damages, the defendants argue that Plaintiffs plausibly could have asserted a claim for gross negligence on the basis of the New York City Medical Examiner's Report of Autopsy (the "ME Report"), which included findings regarding Ms. Ratcliffe's high blood alcohol content and which Plaintiffs possessed as of December 29, 2006.  In support of their argument that Plaintiffs

7

could have sought to allege gross negligence at an earlier date, the defendants point to various statements made by Plaintiffs' counsel, David DeToffol, Esq. ("DeToffol").  First, the defendants point to DeTeffol's statement, in his affirmation in support of Plaintiffs' previous motion to amend, that "findings of gross negligence could be garnered from" the ME's Report. (Decl. of Thomas Catalano, Ex. K ¶ 6.)  Second, the defendants cite to DeTeffol's statement, in the same affirmation, that the January 2007 deposition testimonies of Ms. Ratcliffe's apartment-mates also revealed evidence of the defendants' gross negligence. (Id. ¶ 8.)  Finally, the defendants cite DeToffol's statement, made at a status conference held before the Court on April 23, 2007, that Plaintiffs intended to pursue claims of gross negligence.  Thus, the Glass Defendants contend that, as early as January 2007, Plaintiffs believed that the defendants had been grossly negligent and therefore were in a position to seek leave to amend the SAC to add a claim for exemplary damages. Plaintiffs have no good cause, the defendants insist, for waiting until May 2007 to amend their complaint when the amendment could have been made in five months earlier.

Although Plaintiffs may have contemplated at an earlier date asserting a claim for exemplary damages on the basis of the findings contained in the ME Report and the deposition testimony of Ms. Ratcliffe's apartment-mates, the fact remains that Plaintiffs did not actually decide to allege that the Glass

8

defendants were culpable of gross negligence until Plaintiffs had deposed Vega and acquired the TIPS records.  As the defendants themselves point out, under New York law, it would have been insufficient for Plaintiffs to seek compensatory, let alone exemplary, damages solely on the basis of the allegation that the ME Report revealed that Ms. Ratcliffe had a high blood alcohol content. (See Pl. Mem. at 14, citing, inter alia, Romano v. Stanley, 90 N.Y.2d 444, 661 (1997), for the proposition that "evidence of a high blood alcohol content . . . alone cannot establish, as a matter of law, the 'visible intoxication'" requirement set forth in New York's Dram Shop statute).  It is evident that, regardless of DeTeffol's conclusory statements in his earlier affirmation, Plaintiffs believed they were able to assert a claim for exemplary damages only after the new evidence came to light.

The Glass Defendants do not, and cannot, argue, that evidence arising from Vega's deposition or the TIPS records could have been discovered earlier through Plaintiffs' exercise of due diligence.  It was not until May 2007 that Plaintiffs deposed Vega and not until June 2007 that Plaintiffs obtained the TIPS records.  Plaintiffs sought to amend their complaint on May 12, 2007, a mere ten days after Vega was deposed.  Thus, Plaintiffs have shown that they could not have obtained the new facts earlier and that they exercised diligence in seeking to amend soon after learning the new facts.  Plaintiffs therefore have

shown good cause for their proposed amendment, within the meaning
of Rule 16(b).

Further, the procedural posture of this case weighs in
favor of granting amendment.  The Glass defendants have no motion
for summary judgment pending, and at the time the instant motion
was filed, discovery was ongoing.  <u>Compare</u> <u>Grochowski v. Phoenix
Constr.</u>, 318 F.3d 80, 86 (2d Cir. 2003)(upholding denial of leave
to amend where amendment was sought after discovery had closed
and while summary judgment motion was pending).  Thus, there is
no indication that the Glass Defendants would be prejudiced by
the filing of the TAC or that amendment would unduly delay this
litigation.

Having determined that Plaintiffs have shown good cause
for their proposed amendment under Rule 16(b), the Court next
must address the factors set forth in Rule 15(a). <u>See</u> <u>Parker</u>, 204
F.3d at 340 (noting that movant seeking leave to amend must
satisfy the requirements of both Rule 16(b) and Rule 15(a)).
Rule 15(a) provides, in relevant part, that "a party may amend
the party's pleading only by leave of court . . . and leave shall
be freely given when justice so requires."  A Court should deny a
motion to amend only for good reasons, such as "undue delay, bad
faith or dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue of allowance of
the amendment, [and] futility of amendment." <u>Foman v. Davis</u>, 371

U.S. 178, 182 (1962).  The Glass Defendants argue that, even if good cause is deemed to exist for the proposed amendment, the amendment should be denied on the ground of futility.

Where a party opposes leave to amend on "futility" grounds, the appropriate legal standard is whether the proposed amended complaint fails to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Dev. Fund Co., 608 F.2d 28, 42 (2d Cir. 1979) ("A trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action."); Barrett v. United States Banknote Corp., 806 F. Supp. 1094, 1098 (S.D.N.Y. 1992) ("Leave to amend will not be granted under Rule 15(a), however, where there are no colorable grounds for the proposed claim -- that is, where amendment would prove futile. . . . The 'colorable grounds' requirement mandates an inquiry -- comparable to that required by Fed. R. Civ. P. 12(b)(6) . . . -- as to whether the proposed amendments state a cognizable claim. . . . In sum, amendment is futile if a proposed claim could not withstand a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6).").

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.

11

1996).  The issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claim. Id.  Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (internal quotations omitted)).  A court should "read the complaint generously and draw reasonable inferences in favor of the pleader." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley, 355 U.S. at 45-46).  Except in certain circumstances, consideration of a motion to dismiss must focus on the allegations contained on the face of the complaint. See Cortec Industries, Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir.1991).  "Because the Court's futility inquiry is governed by the same principles as those employed by the court when deciding on a Rule 12(b)(6) motion to dismiss, evidence outside the face of the complaint is not properly considered."  Brezel v. Deloitte & Touche, LLP, No. 03 Civ 1540 (RMB), 2004 U.S. Dist. LEXIS 1841, at *3-4 (S.D.N.Y. Feb. 9, 2004) (internal quotation marks and citations omitted).

The Glass Defendants argue that the proposed amendment is futile because Plaintiffs have "identified no evidence which, even if accepted as true, would entitle plaintiffs to punitive damages. . . ." (Def. Mem. at 11.)  In support of their argument, the defendants state that Plaintiffs have failed to marshal any evidence to establish that Ms. Ratcliffe was served alcohol at Glass on the night of her death; that Ms. Ratcliffe exhibited any signs of intoxication while she was at Glass; or that, even assuming that Ms. Ratcliffe was served alcohol at Glass, she was served by Guzman, who failed the TIPS course, rather than by the other bartender who was working on October 31, 2003, who had passed the TIPS course.  The defendants specifically cite the deposition testimony of various witnesses who were present at Glass on the night of Ms. Ratcliffe's death, including Ms. Ratcliffe's apartment-mates and employees of Glass, and claim that none of these witness have offered any testimony to show that Ms. Ratcliffe was actually served alcohol at Glass or that she exhibited signs of intoxication, such as slurred speech, dizziness, or unsteady gait.  The defendants also contend that the allegation that Guzman failed his TIPS training and was working at Glass on the night of Ms. Ratcliffe's death is irrelevant to a claim for exemplary damages, because TIPS training is not required by New York law and was administered voluntarily by Glass to its employees, and because the allegation rests on the "groundless assumption" that it was Guzman, rather

than the other bartender, who served Ms. Ratcliffe. (Def. Mem. at
15.)

       The Glass Defendants' "futility" argument must be
rejected because it is based on Plaintiffs' purported failure to
produce sufficient evidence, during the course of fact discovery,
to support a claim for exemplary damages.  In deciding whether
the proposed amendment is futile, the Court cannot consider
evidence that arises from the deposition testimony of fact
witnesses or that otherwise falls outside of the complaint. <u>See</u>
<u>Brezel</u>, 2004 U.S. Dist. LEXIS 1841, at *4 (holding that court
could not consider deposition testimony in determining whether
proposed amendment was futile under rule 15(a)); <u>Hannah v. Metro-</u>
<u>North Commuter R. Co.</u>, 753 F. Supp. 1169, 1178 (S.D.N.Y. 1990)
(on motion to amend, "it would be improper for the Court to
address these arguments, as they require consideration of factual
matters outside the scope of the complaint").  Thus, in
determining whether Plaintiffs' proposed added claim of exemplary
damages is futile, the Court must limit its consideration to the
allegations contained in the TAC and decide whether, under New
York law, Plaintiffs have sufficiently stated a claim for
punitive, or exemplary damages. <u>See</u> <u>Finlay v. Simonovich</u>, No. 97
Civ. 1455, 1997 U.S. Dist. LEXIS 19100, at *11  (S.D.N.Y. Dec. 2,
1997) (in deciding whether proposed amended complaint, in which
plaintiff seeks to add claim for punitive damages, is futile,

14

"[t]he issue . . . is whether plaintiff's proposed amended complaint states sufficient facts to support punitive damages under New York law").

Under New York's Dram Shop Act, N.Y. General Obligations Law § 11-101, which expressly provides for the right to recover exemplary damages, a plaintiff's allegations that the defendant acted in a "wanton, willful, and reckless" manner are sufficient to state a claim for exemplary damages. See, e.g., McCauley v. Carmel Lanes, Inc., 178 A.D.2d 835, 836-37 (N.Y. App. Div. 3d Dep't 1991) (holding that "plaintiff's allegations of defendant's 'wanton, willful and reckless' conduct are sufficient to allow" plaintiff to amend complaint to include claim for exemplary damages); McCulloch v. Standish, 167 A.D.2d 723, 724 (N.Y. App. Div. 3d Dep't 1990). Here, as discussed above, the TAC includes the allegation that the Glass Defendants' conduct was "wanton, willful and reckless constituting gross negligence . . . ." (Pl. Mem., Ex. A ¶ 33.)  Whether Plaintiffs will be able to offer facts in support of their claim that the defendants acted with gross negligence sufficient to withstand summary judgment remains to be seen.  Nevertheless, for purposes of determining whether the proposed amendment is futile, the allegations contained in the TAC regarding the Glass Defendants' conduct are sufficient to state a claim for exemplary damages. Accordingly, Plaintiffs' proposed TAC cannot be rejected as

15

futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to file the TAC is GRANTED.  The Glass Defendants have twenty (20) days from the entry of this Order to file an amended answer. Plaintiffs and the Glass Defendants are directed to submit to the Court, within ten (10) days of the entry of this Order, a joint proposed briefing schedule for the Glass Defendants' motion for summary judgment.

SO ORDERED.

Dated:   New York, New York
October /9 , 2007

JOHN F. KEENAN
United States District Judge

16