```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ESTATE OF COURTNEY L. RATCLIFFE,    :
NANCY RATCLIFFE, and ALFRED         :
RATCLIFFE,                          :
                                    :
                    Plaintiffs,     :   05 Civ. 10272 (JFK)
                                    :   OPINION & ORDER
          - against -               :
                                    :
PRADERA REALTY COMPANY,             :
ANASTASIOS TZEZAILIDIS,              :
287 10TH GLASS RESTAURANT, INC.,    :
TIMOTHY SHERRY, FERNANDO HENAO and  :
JOHN DOES I-V and ABC COMPANIES     :
VI-X, being fictitious entities     :
and/or persons, t/a or d/b/a        :
PRADERA REALTY COMPANY and/or 287   :
10TH GLASS RESTAURANT, INC.         :
jointly, severally and in the       :
alternative,                        :
                    Defendants.     :
-----------------------------------X

-----------------------------------X
PRADERA REALTY COMPANY,             :
          Cross-Claimant,           :
                                    :
          - against -               :
                                    :
                                    :
287 10TH GLASS RESTAURANT, INC.,    :
TIMOTHY SHERRY, FERNANDO HENAO and  :
JOHN DOES I-V and ABC COMPANIES     :
VI-X, being fictitious entities     :
and/or persons, t/a or d/b/a        :
287 10TH GLASS RESTAURANT, INC.     :
jointly, severally and in the       :
alternative,                        :
                    Cross-Defendants.:
-----------------------------------X

-----------------------------------X
287 10TH GLASS RESTAURANT, INC.,    :
TIMOTHY SHERRY, and FERNANDO HENAO  :
          Cross-Claimants,          :
                                    :
          - against -               :
                                    :
PRADERA REALTY COMPANY,             :
ANASTASIOS TZEZAILIDIS,              :
```

```
JOHN DOES I-V and ABC COMPANIES     :
VI-X, being fictitious entities     :
and/or persons, t/a or d/b/a        :
PRADERA REALTY, INC.                :
jointly, severally and in the       :
alternative,                        :
                Cross-Defendants.   :
------------------------------------X
```

APPEARANCES:

>    For the Plaintiffs:
>        DAVID J. DETOFFOL, ESQ.
>        305 Broadway
>        Suite 1101
>        New York, New York 10007
>
>
>    For the Pradera Defendants:
>        LESTER, SCHWAB, KATZ & DWYER, LLP
>        120 Broadway
>        New York, New York 10271
>            Of Counsel: Thomas A. Catalano, Esq.

**JOHN F. KEENAN**, **United States District Judge**.

**JOHN F. KEENAN, United States District Judge:**

**BACKGROUND**

Before the Court is the motion of Defendants Pradera Realty Company and Anastasios Tzezailidis (collectively, the "Pradera Defendants"), made pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment to dismiss the claims of Plaintiffs Alfred Ratcliffe, Nancy Ratcliffe, and the Estate of Courtney Ratcliffe (collectively, "Plaintiffs") and the cross-claims of Defendants 287 10th Glass Restaurant, Inc., Fernando Henao, and Timothy Sherry (collectively, the "Glass Defendants"). For the following reasons, the Pradera Defendants' motion for summary judgment is granted.

*Factual Background*

Plaintiffs' claims arise from the accidental death of Courtney Ratcliffe ("Ms. Ratcliffe"), a 23-year old college student, who in the early morning of November 1, 2003, sustained fatal head injuries after falling in the common stairway of the building in which she lived. Unless otherwise noted, the following facts are undisputed.

Defendant Pradera Realty, of which Defendant Tzezailidis is a principal, owns a five-story walk-up residential building at 317 10th Avenue, in New York City (the "Building").

(Defs. 56.1 Stmt. ¶ 1.[1]) Ms. Ratcliffe resided in a fourth-floor apartment in the Building with three apartment-mates, Michael Borsellino ("Borsellino"), Mei Li Walker ("Walker"), and Reza Morvari ("Morvari"). (Id. ¶ 3.) On the night of October 31, 2003, after leaving a Halloween parade, Ms. Ratcliffe met Borsellino, Walker, and other friends at a bar named "Glass" that was located approximately two blocks from the Building.[2] Ms. Ratcliffe's other apartment-mate, Morvari, was working at Glass that night as a busboy. While at Glass, Ms. Ratcliffe consumed alcoholic beverages. Borsellino and Walker, along with two other friends, left Glass and returned to their apartment in the Building, while Ms. Ratcliffe remained at Glass. (Id. ¶¶ 4-7.) Ms. Ratcliffe remained at Glass until approximately 3:45 a.m., when the bar closed. (Id. ¶ 8.)

---

[1] Citations to "Defs. 56.1 Stmnt." refer to the Pradera Defendants' "Statement Pursuant to Rule 56.1," submitted on May 31, 2007. Plaintiffs have not filed a counter-statement as required under Local Rule 56.1(b). While the Court therefore may deem the facts set forth in the defendants' Rule 56.1 Statement admitted, see Local Rule 56.1(c); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001), the Court has relied only upon those material facts that Plaintiffs have not disputed in their memorandum of law submitted in connection with this motion, or which are established as undisputed through this Court's review of the record. See Holtz v. Rockefeller & Co., Inc., 258 F.3d at 73 (holding that a district court "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [a Rule 56.1] statement") (quoting Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 292 (2d Cir. 2000)).

[2] The Glass Defendants comprise the bar's corporate entity and its principals.

Walker arrived home at the apartment sometime between 3:00 a.m. and 3:30 a.m. and called Ms. Ratcliffe's cellphone. Ms. Ratcliffe subsequently returned Walker's call and informed Walker that she had returned to the Building, at 317 10th Avenue, and was on her way upstairs. (Id. ¶ 9-10.) Moments later, Walker heard a "very loud thump" in the common hallway. Walker and Borsellino emerged from their apartment and saw Ms. Ratcliffe laying on her back on the landing of the floor below, at the bottom of the common staircase, apparently unconscious. (Id. ¶¶ 11-13.) Ms. Ratcliffe was wearing stiletto heels of approximately 3 1/2 to 4 inches in height. Walker observed that one of the stilettos was off one foot and the other was partially on the other foot. Believing that Ms. Ratcliffe had passed out as a result of drinking alcohol, Walker and Borsallino carried Ms. Ratcliffe into the apartment and put her to bed. At approximately 5:30 a.m., before retiring, Walker checked on Ms. Ratcliffe and noted that her breathing appeared normal. (Id. ¶¶ 15-17.)

At approximately 11:00 a.m. the next morning, Ms. Ratcliffe's apartment-mates checked on her, discovered that her skin was cold to the touch, and called 911. (Id. ¶ 18.) Emergency Medical Services arrived and Ms. Ratcliffe subsequently was pronounced dead. (Id. ¶ 19.) From the time Ms. Ratcliffe was discovered laying on the landing until the time she was pronounced dead, she did not regain consciousness. (Id. ¶ 27.)

5

The cause of Ms. Ratcliffe's death was determined by the Medical Examiner to be "blunt impact of head with skull fractures and brain injury." (Id. ¶ 20.) At the time of her death, Ms. Ratcliffe had a blood alcohol content ("BAC") of .23, as taken from the vitreous humor of the eye, the location in the body that is likely to provide the most accurate measurement of BAC around the time of death. (Id. ¶¶ 21-22.)

Plaintiffs contend, in essence, that Ms. Ratcliffe's fall was attributable to the defectively loose handrail that runs between the third and fourth floors of the Building's common stairway. Prior to Ms. Ratcliffe's death, neither Alfred Ratcliffe nor Ms. Ratcliffe's apartment-mates had complained to their landlord or to any agent of the Building that the staircase handrail was loose. (Id. 29-30.) Defendant Tzezailidis testified that, to his knowledge, no tenant nor anyone else had ever complained to him or to his employees about the condition of the handrail. (Id. ¶ 29.)

Alfred Ratcliffe testified at his deposition that he "always insisted that the handrail was loose." (Def. Not. Mot. for Summary Judgment, Ex. O. ("Dep. Of Alfred Ratcliffe"), at 40.) He also believed that the Building's stairway was "very steep." (Id. at 12.) After his daughter's death, Mr. Ratcliffe went to the Building, examined the handrail between the third and fourth floors, and observed that the handrail's mounting bracket was bent and that the handrail was loosely bolted to the wall, so

6

that it moved laterally away from the wall to approximately the width of his hand. (Id. at 41-44.)  In addition, Borsellino and Morvari testified at their depositions that, after Ms. Ratcliffe's death, they noticed that the handrail was loose. (Def. Not. Mot. for Summary Judgment, Ex. E. ("Dep. of Michael Borsellino"), at 30; id.,Ex. G ("Dep. of Reza Morvari"), at 28, 32.).

No one witnessed Ms. Ratcliffe's fall. In addition, neither Alfred Ratcliffe nor any of Ms. Ratcliffe's apartment-mates knew if Ms. Ratcliffe typically used the handrail when she ascended the stairway in the Building.  Alfred Ratcliffe, Borsellino, Walker, and Morvari did not know if Ms. Ratcliffe used the handrail or attempted to use the handrail at the time of her accident and had no knowledge of what caused Ms. Ratcliffe to fall. (Defs. 56.1 Stmt. ¶¶ 33-36.)

Plaintiffs asserted claims against the Pradera Defendants for their alleged negligence in maintaining the Building's stairway in a defective condition.  Plaintiffs also brought claims against the Glass Defendants under New York State's Dram Shop Act, N.Y. Gen. Obligations Law §11-1101, for allegedly serving alcohol to Ms. Ratcliffe while she was visibly intoxicated.[3]

---

[3]The Glass Defendants' motion for summary judgment is due to be fully briefed in February 2008 and will be decided by a future Opinion and Order of the Court.

7

The Pradera Defendants now move for summary judgment, arguing that Plaintiffs have failed to offer any evidence to show that the allegedly defective conditions in the Building were the cause of Ms. Ratcliffe's accident. The defendants also contend that they did not have actual or constructive notice of the alleged defective conditions.

**DISCUSSION**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). An "opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal citations and quotation marks omitted). In assessing

the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson, 477 U.S. at 255.

In a diversity action such as this one, the Court must apply the substantive law of negligence of New York State. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). To establish negligence under New York law, a plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached this duty; and (3) this breach was the proximate cause of the plaintiff's injury. See Williams v. Utica College of Syracuse University, 453 F.3d 112, 116 (2d Cir. 2006) (citations omitted).

The Pradera Defendants contend that Plaintiffs have failed to establish the cause of Ms. Ratcliffe's fall. To resist the Pradera Defendants' motion for summary judgment, the plaintiffs must do more than show that the defendants were negligent in maintaining the Building's stairway in a defective condition; Plaintiffs also must show that the alleged negligence was a proximate cause of the accident and injury. See Weber v. Paduano, No. 02 Civ. 3392 (GEL), 2003 U.S. Dist. LEXIS 21288, at *42 (S.D.N.Y. Nov. 20, 2003)("[T]o make out a prima facie case of proximate cause that can survive summary judgment, Weber must show, at a minimum, that the Building Defendants' negligence was

a substantial cause of the damages she sustained."). Proximate cause can be inferred from circumstances underlying an accident and need not be demonstrated by direct evidence, but mere speculation as to the cause of injury is insufficient to establish cause. See Williams v. KFC Nat. Management Co., 391 F.3d 411, 421 (2d Cir. 2004)). To permit an inference of the accident's cause to be drawn from circumstantial evidence, "those inferences must be the only ones which reasonably could be drawn from the evidence presented. If the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts.'" Wurtzel v. Starbucks Coffee Co., 257 F. Supp. 2d 520, 527 (E.D.N.Y. 2003) (quoting Mehra v. Bentz, 529 F.2d 1137, 1139-40 (2d Cir. 1975)) (emphasis in original).

In their Third Amended Complaint, Plaintiffs allege that, after Ms. Ratcliffe returned to the Building in the early morning of November 1, 2003, she "utilized the hand railing therein to ascend the stairs. However, the railing on the third floor was unsecure [sic] and loose, and when she grabbed it during her ascent the railing gave way from the wall, setting off her loss of balance and fall down the flight of stairs." Third Am. Compl. ¶ 21. Plaintiffs, however, have failed to offer any

evidence to show that the allegedly defective conditions in the Building's stairway caused Ms. Ratcliffe's accident. It is undisputed that the accident was unwitnessed and that neither Ms. Ratcliffe's apartment-mates nor anyone else had any knowledge of what caused Ms. Ratcliffe to fall. The only evidence offered by Plaintiffs to suggest that the loose handrail played a role in Ms. Ratcliffe's fall is the report of Plaintiffs' purported engineering expert, Norman Wesler ("Wesler"). Wesler's conclusions about the cause of Ms. Ratcliffe's accident, however, do not rise above the level of mere speculation and thus must be excluded.

The trial judge has broad discretion regarding the admissibility of expert testimony. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir. 1995). Under Rule 702 of the Federal Rules of Evidence, expert testimony must be (1) "based upon sufficient facts or data" and (2) "the product of reliable principles and methods." Fed. R. Evid. 702. The expert must also apply "the principles and methods reliably to the facts of the case." Id. The trial court acts as a gatekeeper to ensure that any technical or scientific expert testimony admitted is both relevant and reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993). Scientific evidence requires "more than subjective belief or unsupported speculation." Daubert, 509 U.S. at 590.

Expert conclusions that are based purely on speculation or conjecture should be excluded. See In re Air Disaster at Lockerbie Scotland, 37 F.3d 804, 824 (2d Cir. 1994). If expert testimony offered in opposition to a motion on summary judgment is determined to be inadmissible, "the summary judgment determination is made on a record that does not include that evidence." Cacciola v. Selco Balers, Inc., 127 F. Supp. 2d 175, 180 (E.D.N.Y. 2001) (citing Raskin v. Wyatt Co., 125 F.3d 55, 66-67 (2d Cir. 1997)).

Wesler's report begins by noting purported violations of the New York City Building Code in the Building's stairway, consisting of defective stair dimensions and the loose handrail.[4] Wesler then attempts to reconstruct Ms. Ratcliffe's accident to show that the allegedly defective handrail, in combination with the defective stairs, ultimately caused her to fall down the stairway. Wesler states that, based on the abrasions on Ms. Ratcliffe's upper right back and the force of the blow to the back of her head, that were noted in the Medical Examiner's autopsy report, Ms. Ratcliffe must have fallen backwards to the third floor landing while she was on the stairs between the third

---

[4] Wesler did not personally examine the scene of the accident but instead relied on deposition testimony, police reports, a video recording, photographs, and the report of the plaintiffs' other expert, Dennis Andrews, dated May 7, 2007, who examined the stairway more than three years after the accident and recorded the stairway's dimensions.

12

and fourth floors. Wesler further relies on a notation from the autopsy report indicating that Ms. Ratcliffe had an abrasion mark on the top of her right foot. Wesler states that the abrasion was caused by the heel of Ms. Ratcliffe's left shoe and is "indicative that she crossed her left foot over her right, a bracing maneuver naturally exhibited in correcting right lateral falls . . . ." (Pl. Mem. Ex. I ("Wesler Report") at 13.) Wesler posits that, when Ms. Ratcliffe fell to her right while on the stairs, she fell "toward a shaky and spring-like handrail," and attempted to correct her fall. (Id. at 14.) Wesler does not state why Ms. Ratcliffe lost her balance but speculates that the "likely factors to the initial precipitation of her loss of balance are either a twist of either heel shoe during her assent, or the inherent unsafe effects of the code violation [stairway] tread dimensions and geometry." (Id.) Wesler does not discuss whether, in his opinion, Ms. Ratcliffe's alcohol intake was a likely factor that contributed to her loss of balance.

Regardless of what caused Ms. Ratcliffe's initial loss of balance, Wesler concludes that "the aforementioned physical evidence and scientific data upholds that she attempted to regain her control while moving against, and by grasping for, the wobbly and spring-like handrail and then had a change in direction and support reactions rearwardly." (Id.) In other words, Wesler surmises that, after Ms. Ratcliffe lost her balance and fell to

her right toward the handrail, she must have attempted to grasp the handrail in an effort to steady herself. Wesler asserts that, because "[w]omen exhibit a very high probability to regain their lateral equilibirum on flat environs," Ms. Ratcliffe's inability to right herself and stop the rearward fall must have been due to an "interim event." (Id. at 15.). The "interim event," Wesler concludes, consisted of "the defective handrailing" and "the undersized, high, steep stairs." (Id.) Thus, according to Wesler, Ms. Ratcliffe, being female, would probably have righted herself and not fallen but for the defective condition of the handrail and the stairs.

Wesler's conclusion that the alleged defective conditions in the stairway constituted the "interim event" that resulted in Ms. Ratcliffe's fall rests sheerly on speculation. Despite reference to "physical evidence" and "scientific data", Wesler can point to no evidence or data whatsoever to show that, once Ms. Ratcliffe lost her balance, she tried to grasp or actually did grasp the handrail. Similarly, Wesler offers no evidence to show that, even if Ms. Ratcliffe did grasp or try to grasp the handrail, a defect in the handrail or the stairs precipitated her fall. As the defendants correctly state, there is simply "no reason to conclude that [Ms. Ratcliffe] was, at any time, using, grasping, or reaching for the hand railing." (Def. Rep. Mem. at 5.)

14

Wesler's guess about what happened on the stairway thus is not "based upon sufficient facts or data," as is required of expert testimony. Fed. R. Evid. 702(1). Accordingly, because Wesler's conclusions are speculative and unsupported by a sufficient evidentiary foundation, the conclusions must be excluded from consideration on summary judgment. See Raskin, 125 F.3d at 67 (affirming summary judgment where expert opinions were "scarcely 'helpful' to a jury within the meaning of [Rule] 702"); Colon v. Abbott Labs., 397 F. Supp. 2d 405, 413-14 (S.D.N.Y. 2005) (excluding expert testimony and granting summary judgment where expert's opinions on general and specific causation were merely speculative); Cacciola, 127 F. Supp. 2d at 184 (excluding expert testimony and granting summary judgment where opinion evidence was based on "unsubstantiated generalizations, speculative hypotheses and subjective evaluation") (citations omitted).

As noted, Plaintiffs have offered no evidence apart from Wesler's report to establish that the defective conditions in the Building were the cause of Ms. Ratcliffe's accident. Absent Wesler's guesswork about the cause of Ms. Ratcliffe's fall, Plaintiffs are left only with the deposition testimony of Borsellino and Morvari, who stated that, after the death of Ms. Ratcliffe, they observed that the handrail was loose; the deposition testimony of Alfred Ratcliffe, who also stated that he

found the handrail to be loosely attached to the wall and that he thought the stairs of the Building were very steep; and the portion of Wesler's report which states that the loose handrail and the dimensions of the stairs are violative of New York City's Building Code.  However, even if violations of the building code permitted a prima facie finding of negligence on the part of the Pradera Defendants, "negligence <u>per se</u> does not . . . impute liability per se" because "[p]roof of proximate causation is still necessary." <u>Weber</u>, 2003 U.S. Dist. LEXIS 21288, at *41. Thus, Plaintiffs' evidence of the Building's defective conditions, uncoupled with evidence that those conditions caused Ms. Ratcliffe's accident, is insufficient to defeat the Pradera Defendants' motion for summary judgment. <u>See, e.g.</u>, <u>Reed v. Piran Realty Corp.</u>, 30 A.D.3d 319, 319 (1st Dept. 2006) ("While plaintiff's evidence need not positively exclude every possible cause of his fall other than the alleged staircase defects, it must be sufficient to permit a finding of proximate cause based on logical inferences, not speculation."); <u>Rodriguez v. Cafaro</u>, 17 A.D.3d 658 (2d Dept. 2005) (plaintiff's evidence of negligence, consisting only of testimony that handrail was loose and stairs were chipped, was insufficient to defeat summary judgment because "a determination that these alleged defects, rather than a misstep or loss of balance, were [the] proximate cause of the plaintiff's accident would be based on sheer speculation") (internal quotation marks and citation omitted);

Grob v. Kings Realty Associates, LLC, 4 A.D.3d 394, 395 (2d Dept. 2004) (upholding grant of summary judgment where "even assuming that the stairs were defective as [plaintiff] opined, the Supreme Court properly determined that the inference he drew linking this defect to Grob's fall was purely speculative"); Kane v. Estia Greek Rest., Inc., 4 A.D.3d 189, 190-191 (1st Dept. 2004) ("Even if an expert alludes to potential defects on a stairway, the plaintiff still must establish that the slip and fall was connected to the supposed defect, absent which summary judgment is appropriate.").

Moreover, Plaintiffs have failed to account for other factors that are equally, if not more, likely to have been the cause of Ms. Ratcliffe's fatal fall. Where, as here, "the circumstantial evidence presented lends itself equally to several conflicting inferences," a jury's finding that defective conditions of the Building caused Ms. Ratcliffe's fatal accident would amount to speculation. Wurtzel, 257 F. Supp. 2d at 527; see also Ingersoll v. Liberty Bank, 278 N.Y. 1, 7 (1938) (where evidence shows "several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery since he has failed to prove that the negligence of the defendant caused the injury"). Here, the evidence shows that Ms. Ratcliffe's

consumption of alcohol in the hours prior to the accident was as likely a cause of her accident as were the allegedly defective conditions in the Building's stairway. As the defendants point out, Plaintiffs' purported toxicology expert, Dr. Richard Stripp, stated in his report that, based on the BAC measurements taken from Ms. Ratcliffe after her death, her BAC at the time of the accident "would have ranged between .12% to higher than [.]20%." (Pl. Mem. Ex. K, at 4-5.) According to Dr. Stripp, this BAC reading indicates that Ms. Ratcliffe was in an inebriated state that would likely have led to "loss of balance and coordination . . .drowsiness, disorientation, mental confusion, and dizziness with altered motor coordination (staggering) . . . ." (Id. at 6.) Thus, Ms. Ratcliffe ascended the stairway in high stiletto heels, at 3:45 in the morning, and – according to the Plaintiffs' own evidence – in what was very likely a state of inebriation.[5] In light of the strong competing inference to be drawn regarding the cause of the accident, a jury's finding that the Building's defects caused Ms. Ratcliffe to fall would constitute impermissible speculation.

Plaintiffs attempt to resist summary judgment by invoking the Noseworthy doctrine, which is sometimes invoked in

---

[5]The Court cites Dr. Stripp's report for the sole purpose of showing that competing inferences exist regarding the cause of Ms. Ratcliffe's fall. The Court is not impliedly crediting Dr. Stripps' findings, qualifying Dr. Stripps as an expert, or ruling on the admissibility of his report.

death cases and which, under certain limited circumstances, entitles a plaintiff to a lower burden of proof on causation. In Noseworthy, the New York Court of Appeals held that a plaintiff benefits from a lesser burden of proof "where the management and control of the thing which has produced the injury is exclusively vested in the defendant, [because] it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present." Noseworthy v. City of New York, 298 N.Y. 76, 80-81 (1948). As the Pradera Defendants rightly contend, however, the Noseworthy doctrine is inapplicable where, as here, "evidence permits no more than speculation as to the cause of plaintiff's fall down defendants' staircase . . . . [and] defendants' knowledge as to the cause of plaintiff's fall is no greater than that of plaintiff." Walsh v. Murphy, 267 A.D.2d 172, 172 (1st Dept. 1999). Thus, because Plaintiffs and the Pradera Defendants "are similarly situated insofar as accessibility to the facts of the deceased's death is concerned, the Noseworthy doctrine has no application." Estate of Novack v. R.D.C. Realty, 1 F. Supp. 2d 163, 166 (D. Conn. 1998) (internal quotation marks and citations omitted).

Additionally, as the Pradera Defendants point out, there is no evidence of actual or constructive notice that can be imputed to them.

In sum, because Plaintiffs have failed to raise a

triable issue of fact as to whether Ms. Ratcliffe's accident was caused by the allegedly defective conditions in the Building, summary judgment in favor of the Pradera Defendants is warranted.

## CONCLUSION

For the foregoing reasons, the Pradera Defendants' motion for summary judgment is GRANTED. The Pradera Defendants' motion to dismiss the Glass Defendants' cross-claims is GRANTED. In addition, the Pradera Defendants' cross-claims against the Glass Defendants are DISMISSED.

SO ORDERED.

Dated: New York, New York
December 27, 2007

JOHN F. KEENAN
United States District Judge